UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| PAUL R. D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22-cv-00242-MKK-JMS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Paul R. D. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1381 *et seq*. For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings.

### I. PROCEDURAL HISTORY

On July 7, 2020, Paul filed an application for Title XVI SSI. (Dkt. 9-2 at 11, R. 10). The Social Security Administration ("SSA") denied Paul's claims initially on September 21, 2020, (Dkt. 9-3 at 6, R. 61), and on reconsideration on January 7, 2021, (*id.* at 19, R. 74). Paul filed a written request for a hearing and on October 21, 2021, a hearing was held before Administrative Law Judge ("ALJ") Deanna Sokolski, where Paul, his counsel, and vocational expert Jessica Conard all appeared telephonically. (Dkt. 9-2 at 31, R. 30). On November 15, 2021, ALJ

Sokolski issued an unfavorable decision finding that Paul was not disabled. (*Id.* at 11-19, R. 10-18). On April 18, 2022, the Appeals Council denied Paul's request for review, making the ALJ's decision final. (*Id.* at 2-6, R. 1-5). Paul now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

## II.  STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that he is not able to perform his previous work and, based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a).[1] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the

---

[1] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to supplemental security income benefits. Often, the parallel section pertaining to the other type of benefits (e.g., disability insurance benefits) is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 404.1520(a).

> claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. "If a claimant satisfies steps one and two, but not three, then he must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). "Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Id.*; *see also* 20 C.F.R. § 416.920. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step

3

five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of his age, education, job experience, and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(g).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence and free of legal error. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citations omitted); *see also Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Paul is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence and free of legal error. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). "Nevertheless, [the Court must] conduct a 'critical review of the evidence' before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation omitted); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

5

### III. BACKGROUND

#### A. Factual Background

Paul was 56 years old on the date his application was filed. (Dkt. 9-3 at 2, R. 57). He has a high school education. (Dkt. 9-2 at 18, R. 17). He has past relevant work history as a saw operator. (*Id.* at 17, R. 16).

#### B. ALJ Decision

In determining whether Paul qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) and concluded that Paul was not disabled. (Dkt. 9-2 at 11-19, R. 10-18). At Step One, the ALJ found that Paul had not engaged in substantial gainful activity since the application date of July 7, 2020. (*Id.* at 13, R. 12).

At Step Two, the ALJ found that Paul had severe impairments of chronic obstructive pulmonary disease (COPD), congestive heart failure, and hypotension. (*Id.*).

At Step Three, the ALJ found that Paul's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 13-14, R. 12-13).

After Step Three but before Step Four, the ALJ found that Paul had the RFC to perform medium work, as defined in 20 C.F.R. § 416.967(c), "except can never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to extreme cold temperatures; and must avoid all pulmonary irritants and workplace hazards, such

as unprotected heights and dangerous moving machinery." (Dkt. 9-2 at 14-17, R. 13-16).

At Step Four, the ALJ concluded that Paul is unable to perform his past relevant work as a saw operator. (*Id.* at 17, R. 16). At Step Five, relying on the vocational expert's testimony and considering Paul's age, education, work experience, and RFC, the ALJ concluded that he can perform jobs that exist in significant numbers in the national economy. (*Id.* at 18-19, R. 17-18). The ALJ thus concluded that Paul was not disabled. (*Id.* at 19, R. 18).

## IV. ANALYSIS

Paul presented several arguments, related to the ALJ's consideration of his subjective symptoms and RFC analysis, but the Court finds that one issue circumvents the others and must be considered first. This issue, as Paul argues, centers on the fact that the state agency reviewing physicians determined that there was insufficient evidence to determine Paul's RFC and, thus, because no medical opinions exist, the ALJ's opinion can only be based on her own impermissible interpretation of the medical evidence of record. (Dkt. 11 at 11-14; Dkt. 15 at 6-10).

### A. Evidentiary Support

Paul filed his application for SSI benefits on July 7, 2020, and his claim was initially reviewed by State Agency reviewing physician, Dr. M. Brill. (Dkt. 9-3 at 4-5, R. 59-60). Dr. Brill was unable to make a medical determination because the claimant "failed to respond to request for updated information" and there was

7

insufficient evidence in the file. (*Id.*). On reconsideration, Dr. J. V. Corcoran came to the same conclusion, that there was "[i]nsufficient evidence to assess the claim" because the claimant had not responded to requests for updated information. (*Id.* at 21-22, R. 76-77). Dr. Corcoran concluded that Dr. Brill's August 2020 assessment, which included no RFC restrictions, was affirmed as written. (*Id.* at 21, R. 76). Nevertheless, the ALJ found that the record contained sufficient evidence to make her own RFC finding. In her opinion, the ALJ considered the State Agency reviewing physicians' opinions as follows:

> J.V. Corcoran, M.D., a State agency medical consultant, reviewed the record in January 2021 and found no limitations (Exhibit 6A). The State agency medical consultant's findings are unpersuasive because they are inconsistent with the evidence received after these evaluations, which indicates that the claimant has impairments that impose some functional limitations. For example, the claimant was noted to have a reduced ejection fraction ranging from 40 to 45 percent (Exhibit 4F/50-75). Another report indicated an ejection fraction that was low normal at 50 percent (Exhibit 4F/37, 57). These findings are also not supported because the consultants did not adequately consider the claimant's subjective complaints.

(Dkt. 9-2 at 17, R. 16).

This assessment is problematic for several reasons. First, the ALJ states that Dr. Corcoran found no limitations, but leaves out the context for such a statement, namely that both reviewing physicians found insufficient evidence to determine Paul's RFC. *See Josette S. v. Kijakazi*, No. 20-CV-4602, 2023 WL 2477536, at *6 (N.D. Ill. Mar. 13, 2023) (had ALJ acknowledged the consultants' findings of insufficient evidence, "she might have realized that *she* had insufficient evidence with which to assess Claimant's case") (emphasis in original). Second, the ALJ finds

8

that Dr. Corcoran's opinion is unpersuasive because it is inconsistent with the results of two cardiac perfusion scans performed after Dr. Corcoran's review. As the Seventh Circuit has made clear many times, however, "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Shellie C. v. Kijakazi*, No. 1:21-cv-01791-MJD-SEB, 2022 WL 3152052, at *2 (S.D. Ind. Aug. 8, 2022) (collecting Seventh Circuit cases).

The ALJ proceeded with her own interpretation of the medical evidence to determine Paul's RFC here. The Commissioner maintains that the ALJ did not exercise any improper medical judgment and, more importantly, the ALJ determines the RFC based on all relevant medical and other evidence, rather than any doctor. (Dkt. 13 at 5-6). While it is true that the ALJ alone determines the RFC, and that "the ALJ need not rely entirely on a particular physician's opinion, the ALJ may not play doctor and fill in evidentiary medical deficits." *Reinhart v. Berryhill*, No. 14 C 7240, 2017 WL 878450, at *6 (N.D. Ill. Mar. 6, 2017) (citing *Miocic v. Astrue*, 890 F. Supp. 2d 1046, 1057 (N.D. Ill. 2012) (citations omitted)). The undersigned is not convinced that the ALJ's decision is supported by substantial evidence, where the conclusion is based on the ALJ's interpretation of the medical evidence in the record, without any consultative or other expert opinions "as to what that evidence might indicate for Plaintiff's disability." *Stephen R. S. v. Comm'r of Soc. Sec.*, No. 3:20-CV-01160-GCS, 2022 WL 897188, at *6 (S.D. Ill. Mar. 28, 2022); *see also Josette S.*, 2023 WL 2477536, at *7 (finding reversible error where state agency consultants' findings indicated there was insufficient

9

evidence to determine whether claimant was disabled, "which would generally trigger the ALJ's duty to seek additional evidence," but ALJ instead "chose to rely on her own interpretation of the medical evidence").

On a final note, the ALJ concluded that Paul, a 57-year-old man with COPD and congestive heart failure, who needs to lie down frequently and use his inhaler after minimal exertion, can perform medium work, which requires standing or walking for six hours of an eight-hour workday, along with frequent lifting of 25 pounds and up to 50 pounds. No medical professional concluded that Paul was capable of medium work, and the ALJ's support for her own conclusion on that point is minimal at best. Her RFC assessment lacks the requisite support. *See Tobias B. v. Kijakazi*, No. 20-CV-2959, 2022 WL 4356857, at *7 (N.D. Ill. Sept. 20, 2022) (finding RFC unsupported where ALJ (but no medical professional) found claimant capable of medium work, despite diagnoses that would prevent such exertional work). For example, although she acknowledges that Paul's occasional work selling scrap metal "does not constitute disqualifying substantial gainful activity," she nevertheless concludes that it "does indicate that [his] daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (Dkt. 9-2 at 16, R. 15). But the hearing testimony on this topic included no detail regarding the physical demands of Paul's scrap metal work. (*See* Dkt. 9-2 at 40-41, R. 39-40). Nor did the ALJ adequately explain why Paul's medication compliance and "fair symptom control" precluded the need for additional work limitations. Paul's daily activity level was minimal. (Dkt. 9-2 at 42-48, R. 41-47). In light of this fact, coupled

10

with testimony that Paul's symptoms were exacerbated by higher levels of exertion, (*id.*; Dkt. 9-5 at 12, R. 186; Dkt. 9-7 at 57-63, R. 310-16), the ALJ should have explained why his "fair" symptom control would not degrade to a debilitating point if Paul performed the medium work of which the ALJ assessed him capable.

In sum, the ALJ's RFC is unsupported. The Court is especially skeptical of the ALJ's conclusion, given that a finding that Paul is limited to light work would likely render him disabled, (*see* Medical-Vocational Guidelines Rule 202.06), and the ALJ's explanation on that point is lacking. On remand, the ALJ is encouraged to ensure that a logical bridge exists between the evidence and her conclusions.

## B. Remaining Issues

Having found that remand is necessary for the reasons detailed above, the Court declines to substantively address Paul's remaining arguments.

## V. CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

So ORDERED.

Date: 5/12/2023

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.